DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TIMOTHY JAMES MORRIS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-3035

[January 22, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Glenn D. Kelley, Judge; L.T. Case No. 50-2016-CF-009011-AXXX-MB.

Carey Haughwout, Public Defender, and David John McPherrin, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Anesha Worthy, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

Timothy James Morris appeals his judgment and life sentence for robbery with a firearm and related charges. We find no reversible error, and we affirm.

*Affirmed.*

DAMOORGIAN and GERBER, JJ., concur.
CIKLIN, J., concurs specially with opinion.

CIKLIN, J., specially concurring.

I agree with my colleagues that there is no reversible error in this case, but I write to address the mandatory life sentence imposed on Morris as a Prison Releasee Reoffender (PRR) pursuant to section 775.082(9), Florida Statutes (2016).

In the proceedings below, Morris, at age 20, was charged with robbery

with a firearm, felon in possession of a firearm, and related crimes. According to the state's theory at trial, the victim went to a high crime area to sell a Rolex watch to Morris, and Morris then stole the watch from the victim at gunpoint. No shots were fired and no physical violence ensued. Morris testified in his own defense that the victim purchased drugs from him valued at $1600 and gave him the watch to hold as collateral.

Prior to the instant case, in 2012, when the defendant was sixteen years old, he was prosecuted as an adult for carrying a concealed firearm and for possessing a firearm as a delinquent. After violating probation, he was adjudicated guilty and was sentenced to eighteen months in prison. This sentence became the predicate for his eventual sentencing as a PRR.

The PRR statute provides that one who commits any one of the enumerated felonies, including robbery, within three years of release from a DOC facility qualifies as a PRR. § 775.082(9)(a)1.g., Fla. Stat. (2016). Upon establishment and proof by the state that a defendant is a PRR, a trial court may no longer sentence the defendant under the sentencing guidelines, but rather must sentence under the PRR statute. *See* § 775.082(9)(a)3.a., Fla. Stat. (2016). For a felony punishable by life, as in Morris's case, the PRR defendant *must* be sentenced to a term of imprisonment for life. *See id.* Further, an offender sentenced under subsection (9)(a) is not eligible for early or control release and "must serve 100 percent of the court-imposed sentence." § 775.082(9)(b), Fla. Stat. (2016).

The trial court sentenced Morris to life in prison, but expressed that it would not have done so if it were not bound by the PRR statute:

> [T]he State has met its burden to establish that Mr. Morris is a prison releasee re-offender. I will concede that if I were sentencing independent of the PRR statute, *I certainly wouldn't be sentencing to life on this.* The offense itself, robbery with a firearm, is a serious offense, so it would -- you know, there would be a substantial and significant term of years sentence. But obviously if I was exercising discretion in a case like this, I wouldn't be sentencing Mr. Morris to life. But I am bound to follow the law, and the law is that if the State establishes that the defendant is a prison releasee re-offender, I'm required by law to sentence to the maximum term for each conviction. And that's what I am required to do, and that's what I must do here.

(Emphasis added.)

Because robbery with a firearm is a felony punishable by life, *see* section 812.13(2)(a), Florida Statutes (2016), and because Morris was released from prison less than three years prior to committing the qualifying offense, the trial court was required to sentence him to life in prison. Hence this court's affirmance.

That being said, Morris raises a compelling argument on appeal. Morris argues that his sentence is cruel and unusual in violation of the Eighth Amendment of the United States Constitution and article I, section 17 of the Florida Constitution, as applied, since the predicate offense was committed before he turned 18 and he was only 20 when the qualifying offense of robbery with a firearm was committed. Although he argues the sentence is cruel and unusual as applied to him, his argument is not entirely individualized, but rather focuses on the lack of maturity of such a youthful offender. He cites *Roper, Miller*, and *Graham* in support of his arguments. *See Miller v. Alabama*, 567 U.S. 460, 465 (2012) (holding mandatory life imprisonment without parole for juvenile offenders violates Eighth Amendment prohibition on cruel and unusual punishments); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (holding Eighth Amendment prohibits sentences of life without parole for juvenile non-homicide offenders); *Roper v. Simmons*, 543 U.S. 551, 578 (2005) (holding Eighth and Fourteenth Amendments prohibit execution of juvenile offenders).

Indeed, Morris's case is demonstrative of the effect of undiscerning inclusion of youthful crimes in mandatory statutory sentencing schemes. The following passage from *Graham* aptly articulates the reasons why crimes committed by juveniles are sometimes worthy of different considerations, and it supports an argument that crimes committed while an offender is underage should not be permitted to establish predicate offenses for sentencing under recidivism statutes:

> *Roper* established that because juveniles have lessened culpability they are less deserving of the most severe punishments. 543 U.S., at 569, 125 S. Ct. 1183. As compared to adults, juveniles have a "'lack of maturity and an underdeveloped sense of responsibility'"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed." *Id.*, at 569–570, 125 S. Ct. 1183. These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime

3

reflects irreparable corruption." *Id.*, at 573, 125 S. Ct. 1183. Accordingly, "juvenile offenders cannot with reliability be classified among the worst offenders." *Id.*, at 569, 125 S. Ct. 1183. A juvenile is not absolved of responsibility for his actions, but his transgression "is not as morally reprehensible as that of an adult." *Thompson*, *supra*, at 835, 108 S. Ct. 2687 (plurality opinion).

No recent data provide reason to reconsider the Court's observations in *Roper* about the nature of juveniles. As petitioner's *amici* point out, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. See Brief for American Medical Association et al. 16–24; Brief for American Psychological Association et al. 22–27. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults. *Roper*, 543 U.S., at 570, 125 S. Ct. 1183. It remains true that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Ibid.* These matters relate to the status of the offenders in question; and it is relevant to consider next the nature of the offenses to which this harsh penalty might apply.

*Graham*, 560 U.S. at 68-69.

Although Morris's argument is thoughtful and forceful, reversal is simply not supported by the current state of the law. The First District recently addressed this precise issue in *Singleton v. State*, 278 So. 3d 895 (Fla. 1st DCA 2019). It rejected the defendant's argument that his mandatory life sentence as a PRR violated the Eighth Amendment because it was predicated on a prior conviction for an offense committed as a juvenile, and it concluded that the prohibition against life without parole for juvenile offenders does not extend to adult reoffenders. *Id.* at 896-97. Similarly, in *Marshall v. State*, 277 So. 3d 1149, 1151-52 (Fla. 1st DCA 2019), the First District rejected an argument that a mandatory day-for-day sentence under the PRR statute was unconstitutional because it was predicated on an offense committed as a juvenile.

However, criminal justice reform is gaining popularity around the

4

country, including with the passage of the Federal First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which is largely aimed at recidivism reduction. In light of this federal shift toward reform, perhaps the Florida Legislature will in the future consider exclusion of sentences served for underage crimes from qualifying under recidivist statutes, or at least grant sentencing judges the discretion to decline to apply such statutes where a predicate offense was committed by a juvenile.

Until then, there is no judicial discretion to account for offenses committed by a juvenile under the PRR statute and the trial judge was bound by the statutes as written. Thus, young Morris is faced with a life sentence, a sentence largely reserved for those with "irreparable corruption," based in part on a crime he committed while underage and with a "lack of maturity and an underdeveloped sense of responsibility." *See Graham*, 560 U.S. at 68 (citation omitted). We are bound to affirm.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***